Our next case on the call the docket is agenda number 14 case number 1 1 3 2 2 7 Debra Orlando Cooney at all appellants versus Lyle H Rossiter jr. etc. appellee counsel for the appellants thank you mr. chief justice members of the court counsel may please the court my name is Tom Zimmerman I represent the plaintiffs appellants in this matter the two issues before the court today are whether or not child custody evaluators should be afforded absolute immunity and whether or not the plaintiffs claims are barred by race judicata the lower courts have expanded both of these judicially created equitable doctrines too broadly and in this case the court should find that you under the doctrines of absolute immunity and race judicata they should be narrowly construed they should not be expanded beyond their bounds and court-appointed child custody evaluators should be afforded qualified immunity for the investigative and reporting function that they perform they're still entitled to absolute immunity for when they testify in court under their witness and testimonial privilege but they should be entitled to qualified immunity for the out-of-court function that they perform in their the immunity issue is one of first impression in Illinois now the lower courts relied entirely on a federal court decision affording absolute immunity to the defendant in a putative class action case filed by one of the plaintiffs that sought a section 1983 civil rights violation now this court has an opportunity not some district judge this court has an opportunity to less interest of the children will be protected by affording qualified immunity to custody evaluators for their investigative and reporting functions the reason is there will be nothing to deter intentional misconduct fraudulent misconduct if custody evaluators are afforded absolute immunity the purpose behind absolute immunity or qualified immunity is to encourage honest communications to encourage people to act in the best interest of children in this case without the fear of reprisal from a disgruntled parent and if they make a mistake well that's all right because they're trying their best they're trying to act in the best interest of children and we understand that but if they're trying to game the system if they're committing intentional fraud intentional misconduct qualified immunity will protect everything except for that the best interests of the children are of paramount importance and in fashioning what immunity to afford to these individuals the court must keep that in mind the US Supreme Court has held that a parent's right to the care and custody of their children is a fundamental liberty interest it's a right far more precious than property rights it's a basic civil right and so the question is what is the best approach to protect that what is the best approach for this court to employ in a judicially created immunity to protect the best interests of the children and it's our position that it's child custody evaluator to try their best to make a mistake yes but to still try their best and act in good faith and they won't get sued if there's absolute immunity however there's absolutely no incentive for that person to try their best absolutely no incentive because there's absolutely no punishment there's no harm that can befall them now the thing to remember is the trial judge is relying on this investigative report under the statute section 5 slash 605 of the act the Marriage Act that provides for the appointment of what's called a child custody investigator states that a court may order an investigation and report concerning custodial arrangements for a child and the investigation a report may be made by a child welfare agency it's not an attorney that goes out and does this usually a social worker psychologist the word investigator or investigation appears 13 times in that statute and that section of the act the purpose the function that's performed by this individual is to go out and gather the facts interview witnesses review reports talk to friends see what's going on out there and make a recommendation report that back to the judge and the trial judge is relying on this this is supposed to be impartial this is truthful this is a neutral report and the trial judge relies on that in making a determination as to who to give custody the children to if if this report is erroneous if it's cooked if it's intentionally fraudulently one-sided to favor one parent then the trial judge is duped the trial judge is now making a decision based on erroneous information taking the child from the fit parent and giving the custody of that child a minor in their formative years custody of that child to the unfit parent and the unfit parent may have a history of abuse or violence that won't be brought to the court's attention so the children are the ones who would suffer and that's has done this time and time again he received $100,000 for this evaluation an evaluation that typically cost between four and eight thousand dollars the Illinois appellate court and in Ray Hocken noted in a case where this man was an evaluator and he received seventy-one thousand dollars for his services in that case the court noted that usually it's between four and eight thousand his actions in that case were highly inappropriate highly unusual and the report that he prepared was highly unusual he's done it to another lady Ellen Baines who's here today and and he can do it he can do it because there's absolutely no recourse there's no recourse there's nothing that communications we need to have the evaluator try their best and try to act in the best interest of the children in order to have the system work so that you don't have disgruntled parents suing them and they don't have the fear of these issues raised prior to the appointment the the problem that we have is nobody knows until it's too late nobody knew that the father Lorenzo his he got remarried his then wife Lori had two contacts with Rossiter prior to his pre-appointment during the evaluation Rossiter then ignored unfavorable evidence about the father's threats of violence in history against Debra Cooney is his ex-wife he threatened to kill her he threatened to harm the children he told a witness that he didn't want the children he was only doing this to get back at Debra unfortunately Justice Thomas the trial judge relied solely on Rossiter's report in deciding to take custody away from the mother and give it to the father this this investigation lasted nine months this is not a situation where it's an emergent situation and somebody has to go into a house and make a snap decision as to whether a child is being abused this is much different than that this this this took place over nine months during which period of time he he looked at medical records and and picked out what would favor his opinion his predetermined opinion and didn't mention medical diagnoses that countered his opinion he only talked to the father's friends to get favorable opinions and that may be unfortunate but isn't this the type of thing that could be taken care of in the litigation itself rather than after the fact litigation there is no and thereby preserve absolute immunity for the dissemination of information without recourse and yet the same factors that you seem to be bringing up seem to be able to have been brought up in the underlying litigation unfortunately there Rossiter didn't even show up for the hearing the his report was given to Debra the morning in court she had 20 minutes to read it she was told to bring the kids there and under a gag order didn't know why the judge relied solely on Rossiter's report he he he bought it hook line and sinker and and the kids were taken away from her without testimony or cross-examination well it did it did go up on appeal and we were able to get visitation back but unfortunately by the time it got to now the children have been living with the father for two years they were taken away from their mother and had to live with an abusive violent man for two years now he is the custodial parent now the burden is on Debra to demonstrate that custody should be transferred back to her yes the question maybe I don't understand the record I think what but justice Thomas's suggestion and just camera as well certainly at the time for example the report was being entered into evidence an objection could be made that it's hearsay we have some discussion whether it's business record etc etc and that could be raised again in a post-trial motion it'd be raised on appeal all those kind of issues there was a the litigation can sort these things out was she represented by counsel she was represented by counsel were objections made to any of these things objections were made up and down they vigorously objected to the procedure that was in place where she was given his evaluation and had 20 minutes to read it in court he didn't even show up there was no subject of cross-examination and so the kids were taken away right then and there and moreover justice Tice the children suffered additionally one of the boys Christopher in Rosser's evaluation he said Christopher was suicidal and should be immediately admitted to a psych ward upon reading that the trial judge ordered Christopher be taken directly from court to a hospital where he was involuntarily admitted to a psych ward he was medicated was stayed overnight ultimately they evaluated him at the hospital and and wondered there's nothing wrong with this boy why is he here and they discharged him so the the problem that we have is that the trial judge is duped the trial judge it doesn't know because you they'll be reading a report and they don't know that Rossiter omitted certain information that would be unfavorable to his conclusions they don't know that Rossiter would be picking and choosing things at random so that it would support his conclusion they're relying on what suppose your position counsel the Rossiter did all this omitted everything you've just said as a result of a previous conversation between the father and Rossiter yes that we've alleged that and much more in the complaint unfortunately we never had a chance to get to the evidence because the complaint was dismissed on a motion because of immunity and so what the safeguard justice Thomas that the evaluator would have I believe was was one of the issues that you were getting at this and your question was wasn't there a safeguard it could be brought up later in court the safeguard for affording qualified immunity to the custodial evaluators is in the event that there is a perhaps a frivolous complaint that's brought against that person all they need is a motion to dismiss because number one you need a heightened pleading standard they the complaint must plead intentional misconduct must plead for all the who what when where and then you have a gatekeeper you have the trial judge who will test the allegations who will weigh the evidence who can dismiss a frivolous complaint this is not unlike having to plead punitive damages in a complaint you have to motion it up and bring your evidence to the judge and say here's here's the intentional misconduct that we have found is that sufficient is that does that meet the burden of allowing punitive damages to be brought to the jury in this case there's a gatekeeper and that's the trial judge and moreover if it's a frivolous complaint then the so there's ample deterrence from bringing frivolous complaints just getting back to the procedures that my colleagues have talked about before at the trial or when there was a court-appointed evaluator couldn't it have been in mrs. Orlando couldn't she have had her own expert so there would be some contrary evidence or there would be additional evidence to test and judges generally just don't rely on one doctor's report there's other evidence that's in consideration in the best interest hearing it's only one part of of the decision-making by judges so there's might be an evaluation there might be two evaluations but there's other evidence the judge takes into consideration what else was there presented that's true justice Burke there was ultimately a custody trial two years later where the plaintiff was able to bring forth expert testimony unfortunately that was two years too far down the road but there must have been time from the court-appointed evaluators appointment and the actual report made that perhaps mrs. Orlando you know seeing someone else miss Orlando did have psychological testing performed from an independent psychologist which ultimately contradicted the conclusions no because it was nobody knew at that time what the evaluation was going to be he took nine months during which time he was only communicating with as we allege in the complaint based on what we know based on the facts and the evidence he was communicating with the father's attorneys the father's attorneys got an advanced copy of the report the mother didn't know what was going to be in the report so how she all she knew the last time there was a child custody evaluation many years earlier she was awarded custody she was determined to be the fit parent and as far as she was aware of the circumstances to warrant taking the children from her and giving them to an abusive hostile parent and so there was really no reason for her to anticipate that there would be anything negative coming from this report and and the procedure under the act specifically allows for this report to be presented to the trial court and the court to rely on this report which the court solely did at that initial hearing Rossiter wasn't there she was totally taken by surprise and had no way to anticipate what would what was going to occur that her children would be ripped from her right there at that at that very court hearing and one of her boys sent to be involuntarily admitted into a psych ward there's no way that she could have anticipated that two years later now she has some time to try and sort things out and and and get some counter testimony but by then the damage is already done the children are ripped from their mother they're given to an abusive unfit parent one of them had already turned 18 so so by the time we were able to to get visitation for him his claim was moot and the standard then change now the father is in custody now the burden is on her to show she should get custody back that there's a change in circumstances that warrant him losing it and that she should get it back now she has the burden of proof and simply because this is a a court appointed individual doesn't mean that he should be cloaked with absolute quasi judicial immunity the the the statutes are replete with people who are only of qualified immunity for example under the the Juvenile Court Act section 2-17.1 the court can appoint a special advocate for a minor to protect the minors best interest and the proper delivery of child welfare services they're immune for good faith acts but not for willful misconduct under the probate act section 20-8 the court can appoint an appraiser to go out and appraise property and report on its value there's no absolute immunity for that so we shouldn't get hung up with the label that this person is court appointed and therefore they're ipso facto entitled to absolute immunity the court should instead look at the functional approach to immunity that's what the courts employed they look at the nature of the function that's performed by the individual the nature of this function is investigative its fact-finding its neutral it's more akin to that of a social worker who goes out and investigates and prepares a report and social workers are only entitled to qualified immunity the 5th 7th 9th circuits have all held that the Supreme Court of Alaska has held that and the Supreme Court of Alaska held a social worker much like a police officer who goes out and investigates and prepares an affidavit in support of a search warrant is only entitled to qualified immunity I see it at my time is is up I thank you for your attention Thank You mr. Zimmerman council for the Apple II may it please the court I'm Scott Howie I represent the defendant Apple II in this matter dr. Lyle Rossiter jr. this court should affirm the decision of the appellate court affirm the judgment of the circuit court and reiterate the reasoning of the district the federal district court and the 7th circuit in a similar manner all of which were based on the principle that individuals who take part in judicial and quasi judicial proceedings are absolutely immune for their acts and statements in connection with those proceedings that's a proposition that's held and recognized not just by the four courts that have already previously addressed this and similar allegations but by a host of courts in a host of other cases all because they recognize that the balancing test that sets public policy of encouraging the free and open expression of opinion against the individual litigants interest in tort recovery is a balance that weighs heavily in favor of the public policy interest the interest should it make any difference in our analysis that this was a report that was admitted rather than the doctor being called in to testify and being subject to cross-examination not at all your honor for one thing that the ability to cross-examine a witness or a reporter who presents a written report is something that's always available it's something that can be that testimony is not allowed cross-examination is one of the most important engines of the truth-seeking function as we heard not just in in this case but in the case before this one today cross-examination is part of the litigation process it's part of that process that enables the the court to sort out there was no objection made to the admission of the doctor's report according to mr. Zimmerman the objection was made and the specific proceedings and the transcripts are not part of the record in this case so that's unknown but the the fact is that the availability of cross-examination is is always there the ability even help that's something that's within the judges discretion and that again is the basis for for further litigation it's the basis for a post-trial motion as justice Thomas and justice Tice suggested this morning it's the basis for an appeal if the post-judge motion is denied it can be and all those things were done in this case they were and that is the end up two years later with finally getting a hearing that's correct and and that's that that's the function of the the judicial process litigation sorts things out as justice Tice observed during mr. Zimmerman's argument that's the the the counterbalance it's the aspect of litigation that makes it fair to eliminate the the availability of a tort remedy for a possibly deserving plaintiff the you know taking the children immediately do you consider that the best interest of the children to unknown to the mother unknown to the trial judge in that case considered it to be in the best interest the trial judge is the one vested with responsibility to consider the evidence before him to consider the that's the allegation again made by the plan which for purposes of this posture we take as true as we do all of the allegations that that are made in a complaint we take them as true and certainly there's great room for dispute if this case ever reaches that point but I know that the denial of it of the lack of denial of the admission of that report can rise to the level of abuse of discretion by the trial judge that it is certainly an argument that the plaintiff could have made in that case it is a point big pardon at which point before the trial judge himself that can be raised at the time that the the report is considered the fact that it's being being considered without the availability of cross-examination is a basis for objection it's a basis for a motion to reconsider or a post-trial motion or an appeal and again it was raised my understanding is that it was raised and that the trial judge in his discretion did not find that it was meritorious but that again is within the use of discretion when he's allowed to raise it I beg your pardon your honor does that cure the abuse of discretion on the part of the trial judge if the trial judge allow them to at least raise the issue of abuse of discretion what cures the the potential abuse of discretion is the availability of further litigation the availability of self-help if you will and the plaintiff claims to have exercised though those methods of self-help claims that they were unsuccessful but it is the self-help itself it's the the litigation process and the availability of remedies other than tort relief that makes that fair it makes it fair to potentially eliminate the possibility of tort relief to a potentially deserving plaintiff the counter-interest and the what weighs against the the interest in tort relief is the public policy that everyone recognizes in fostering the free and open exchange of opinions to make dr. Rossiter liable for the the egregious allegations that the plaintiffs have leveled against him is to open the door to further allegations by other plaintiffs who might also be dissatisfied or dismayed with the the custody decisions rendered based upon reports by other psychologists or psychiatrists even if the allegations against dr. Rossiter are true and again for purposes of this proceeding we were pretending that they are even if those allegations are true absolute immunity is necessary to provide shelter to provide room for genuine and honest and good custodial evaluators professionals who were asked to perform these roles to provide the sort of candid open information that this sort of context requires now regardless of whether dr. Rossiter himself might be deserving of that protection in the plaintiffs mind there are a host of other professionals not just custodial evaluators but guardians ad litem and child representatives and social workers plenty of people in the social system in the judicial and quasi judicial system there are are well situated to provide that sort of assistance to the courts in this case the the custodial evaluator was appointed by the court he was acting as an arm of the court and just as the judges are entitled to and demand and require that sort of immunity in order to make it possible for them to serve in their judicial functions the individuals who are called to testify or to prepare reports in the context of this sort of judicial proceeding also require that same sort of protection ours is an adversarial system of justice and disputes don't come any more adversarial than the child custody context there is always if not a winner at least one loser as the Supreme Court has has written and in situations that are sufficiently contentious to erupt in litigation there is always the possibility that a judicial decree is not going to be enough to cap that litigation if the parties who are called upon to make these professional evaluations cannot be secure in the knowledge that they can make decisions and and make recommendations and evaluations that will certainly be unpopular with one or both of the parties then they cannot serve those functions to ask them to do so is to ask them to risk personal ruin personal financial ruin for the possibility of rendering a decision that one or both parties finds unsatisfactory that's a system that would deter all but the most hardy or or potentially the most well-off from taking part in in this sort of proceeding and who could blame them if this court were for example open to litigation based upon the results that it were to render in this case or another case it would be virtually impossible for it to keep that out of its mind the plaintiff in fact acknowledges the fact that what all the cases have held which is that the potential for personal liability in the speech of professionals and people who are asked to perform in these roles they not only recognize that they embrace it it's part of the plaintiff's argument that the potential for personal liability is is something that in their mind keeps experts honest it's what they describe as the sort of thing that's necessary in order to make sure that there is the fear of personal liability in order to make sure that the professionals render good reports but the fear of potential liability does a lot more than that and all of the cases that address absolute immunity talk about what personal liability can do it doesn't just keep experts honest it keeps experts away it keeps experts quiet it keeps them from rendering the sorts of professional opinions that our judicial system so sorely needs bear in mind that dr. roster was appointed as the plaintiffs have pointed out under authority of a statute that enabled the circuit court to ask for him to provide his assistance and that's a judgment by the legislature that this sort of assistance is valuable in the child custody context it's necessary but in order to encourage good and qualified and competent evaluators to take part in these procedures it's necessary to provide them the protection against the sort of ruinous personal liability relatives we invite pardon me rather than place the emphasis on the immunity could we not look at the errors if there are such made by the trial judge in deciding this case you're talking about the errors of the trial judge in the we're assuming again within this procedural posture that that they were errors but if they were errors they are things that are remedied better remedied through the judicial system in the context of that particular case so we need not address the immunity question if we find well it's not sure procedurally how this court would address that your honor because that case is not before this court the plaintiffs had the ability to bring it before this court they had the ability to appeal and according to Mr. Zimmerman they did appeal and actually secured some of their relief the fact that the appellate court did not provide additional relief is perhaps a function of the the judicial system of litigation sorting these sorts of things out it it's the sort of self-help that is available to the plaintiffs instead of the tort liability that they would rather have in this case and again it's that it's that balancing test that makes it fair to deny possibly some deserving plaintiffs the possibility of tort recovery mr. Howard would you address mr. Zimmerman's contention that qualified immunity for the most part takes care of the issue and only in the most egregious cases of fraud intentional misconduct which would have to be fled would there be an issue certainly your honor and I begin by addressing a misstatement mr. Zimmerman made the notion as he put it that if there's qualified immunity then the good evaluators as he put it will not get sued and that actually is not what qualified immunity stands for absolute immunity provides they can't be sued or can be dismissed on a motion qualified immunity would require the defendant to go through the process of discovery process potentially of trial and and eventually the possibility that a finder of fact might find that he did in fact act wrongly despite a good-faith dispute over over what he did that immunity is insufficient because it's not enough to encourage evaluators or professionals and in similar roles to provide the sort of candid unfettered information and opinion that the system demands of them absolute immunity is enough because it cuts off cases at the start the possibility as as many courts have recognized that that might also cut off some meritorious cases is deemed to be acceptable in the context of the balancing test that this court is called upon to make not just because the interest in safeguarding that exchange of ideas is so valuable but because the elimination of the tort remedy is not so onerous and the reason it's not so onerous is because there are so many other avenues of self-help the possibility of objection the of an expert under the fact that are known or that are alleged to be the case here I'm struck in fact by all the many things that Mr. Zimmerman raised this morning some of which actually are in the pleadings not all of them but if those things are true and if those things are provable then that's the sort of exculpatory evidence the sort of impeachment evidence the trial lawyers salivate over they would love to have that sort of argument to be able to make it to a judge or to an appeals court or to this court that's the sort of thing and those are the sorts of contexts the settings in which it's most appropriate to raise that sort of evidence in the first place in the case where it might actually make a difference where it might prevent the injury that the plaintiffs are now claiming rather than being used offensively in a case of this sort where all they can do is seek recovery for an injury they claim already to have suffered everybody wins in that sense certainly the system wins when the exchange that the free and open and unfettered exchange of opinion even unpopular opinion or even opinion that's likely to make someone very angry is encouraged this system requires that sort of open and open exchange of ideas it's the same sort of immunity that protects this court and every other court in the state and it should protect dr. Rossiter and other custodial evaluators and other professionals who serve in similar roles when they act as an arm of the court what actually is in the record for us to consider you have the plaintiffs complaint and that's all this is this case was was dismissed on the pleadings and again as I acknowledge we're pretending that the allegations of the complaint are true for purposes of this posture you have the plaintiffs complaints and the things that the plaintiff says that my client did those are things that any plaintiff might be able to say and mr. Zimmerman's notion that there is some heightened pleading standard for for this sort of thing is nowhere to be found in the procedure that I'm aware of it certainly hasn't been raised in the briefs there is nothing preventing the plaintiffs in this case the plaintiffs in the next case from claiming that that the custodial evaluator appointed by the court in their case was biased was bought and paid for was incompetent was insufficient all those things that the plaintiff can freely throw around as allegations in this case can be made in regardless of whether they are provable and that is why absolute immunity is essential really in any case but especially in cases in the child custody context I know this court is aware of just how contentious and just how heated and just how emotional those cases can be and a party who is dissatisfied with the result there's there's no telling what sorts of of litigation what sorts of allegations they might be willing to make even possibly in good faith and even believing them to be true this is the sort of context that is in which those sorts of allegations are endemic I might also a briefly addressed the idea that this goes even beyond the idea of professionals this is not just about court-appointed evaluators bear in mind that we're also talking about statements allegedly made to the DCFS and in that context this case is not just concerned with professionals like dr. Rossiter this case touches every citizen who might have some reason genuine reason to contact DCFS to contact state authorities about a neighbor child who he or she believes to be in danger what the plaintiffs asked for is not just that you allow court allow liability for court-appointed evaluators but that you also allow liability in a qualified immunity sense for private citizens who should not be deterred from making those sorts sorts of phone calls certainly shouldn't have to wonder if they're worried about the neighbor child next door shouldn't have to worry that making a call to DCFS will subject them private citizens to possibly ruinous financial liability the system protects everybody because it's necessary to protect the innocent this court has recognized a host of other courts have recognized that absolute immunity will do that qualified immunity and the exposure to still involves the exposure to potential liability if I might take a moment to conclude my thought quickly only absolute immunity will accomplish that and that is why it's necessary in this case and why it's been proper in every court to address this case so far I ask this court to affirm thank you Mr. Howie Mr. Zimmerman before you start you've had a number of questions or number of questions have been raised about the underlying case of course that's not before us but you said as far as the lawsuits that could be brought against evaluators if we accept that there should be a qualified immunity there is a gatekeeper the trial judge who takes care of it should we not could we not be focusing on also the gatekeeper the trial judge who lets in the reports isn't that really the crux of the problem in this case the the unfortunately Justice Karameier the trial judge who lets in the report is duped just like the other aggrieved parent and doesn't so could that happen in a lawsuit against an evaluator trial judge being duped it well there would have to be evidence and and the plaintiff would have to bring forth evidence to support the allegations and and so ultimately it's going to bear out and I guess I don't understand why the the fraudulent or report that's induced by payment of unexorbitant sums can't be brought before the trial judge in the underlying case unfortunately sometimes you don't find out about it until later and in this case the plaintiff didn't find out about many of this of these misconduct and these misdeeds until later in other proceedings when she was indicated as a child abuser by the DCFS in that proceeding then she was finally able to get some cross-examination and and and some of this information came out but that was much later she she she didn't have that ability to bring this information out she didn't know it she he wasn't subject to cross-examination and so the the safeguards that the appellee talks about the availability of further litigation justice Carmeier that that you've just mentioned sometimes that is not a safeguard because you don't know about it at the time and by the time you find out about it it's too late this is an equitable doctrine this is judicially created and and the point here is what is the best way to protect the best interests of children whether whether you expand the scope of this judicially created doctrine as a matter of sound public policy of the state or whether you limit the scope so that the children are protected so that you deter intentional misconduct and and the appellee mentioned the he foretells that there will be a flood that's why the courts justice Thomas employed the functional approach the courts that have looked at this issue the Vlastelica court in the Illinois appellate court who afforded absolute immunity to child representatives the shied court the Seventh Circuit that afforded absolute immunity to guardian ad litems they addressed this very issue and said these must be attorneys the statute that that provides for the appointment of these people says that they must be attorneys this court has the ultimate disciplinary power over attorneys you can you can discipline them you can disbar them and and the courts those specific courts recognize that fact and said you know there is a safeguard here these attorneys livelihoods are at risk that's a safeguard to keep them in check to deter them from committing misconduct we don't have that safeguard with the social workers or or custody evaluators because with the function that they perform out of court there's no judicial oversight over that and and the courts don't have any way of discipline it these individuals like they do a trail in some public policy concerns here right I mean when when you listen to Mr. Howie talk about qualified immunity for example you would hope I mean this court you everyone here hopes that the vast majority of these people who come in and give evaluations are being legitimate I mean that's the hope right and as a result of that for the very few we're balancing the policy of you saying well it's the best interest of the child to be able to have these actions against these individuals like in your case your complaint Rossiter in this case versus the what we hope is the vast majority of people giving their opinions unencumbered by the thought of having regardless of having a plate fraud or misconduct I think mr. Howie's right that would still involve discovering at least the potential of a trial right to determine some of the facts so aren't isn't that what we're doing here really the just balancing policy concerns it is it is absolutely a balance of policy concerns and the balance is this under absolute immunity the the what which is what the Appley advocates the court system is powerless to deter intentional misconduct by these individuals and the Alaskan Supreme Court hit it right on exactly what you're you're referencing justice Thomas they said we're not going to see a flood of lawsuits here number one qualified immunity is sufficient because you have a gatekeeper number two just like you have in defamation where something is sacrosanct as the as the First Amendment freedom of speech that's only afforded qualified immunity and and and the individuals the vast majority of them who perform these functions are honest and forthright and are trying to do the right thing maybe they make a mistake but they're honest and they're trying to do the right thing but and and and and the problem is you're going to you're going to balance that that minor burden of potentially a lawsuit every now and then when you have a gatekeeper against potentially somebody who's a bad apple that you run across or somebody who's trying to do something honestly and you're and you're going to weigh that against an absolute immunity which is a powerless system to deter these people because there's absolutely nothing there's no teeth in it Mr. Howie mentioned that if you do this now you're opening it up the floodgates now people are going to fear about reporting abuse and neglect to DCFS the neighbor is going to be afraid to pick up the phone and report child abuse to DCFS section 5 slash 9 of the abused and neglected Child Reporting Act says anybody who in good faith in good faith makes a report of suspected child abuse or neglect is immune from liability except in cases of willful or wanton misconduct the statute specifically provides that this qualified immunity for something as important as reporting child abuse or neglect so his concerns are unfounded this is sophistry what we're saying is you have a situation every now and then where you have a bad parent and they're probably going to lose custody the child anyway they have nothing to lose why not buy off the evaluator why like in this case why not do it put the children in the way and use them as a tool to get back at your ex-spouse why not do that if the worst thing that could happen is that the trial judge looks at the evaluation and says you know what I don't buy it I'm going to keep the kids with the with the other parent who deserves them and then the evaluator goes on and does it again and again and again because he can the the parent was going to lose custody anyway there's no teeth to it and what we're asking is protect the children protect the interests of the children when Abraham Lincoln argued in 1846 and in Cowles v. Cowles this court held the power of the court to protect all children within its jurisdiction is a very ancient origin and cannot be questioned the policy of this state should be to encourage honest and truthful communications by child custody evaluators in custody proceedings and the way to encourage it is by providing a mechanism to deter the crooked deter the intentional fraudsters and the charlatans from coming in and polluting that temple of justice qualified immunity for the investigative and reporting function that that that these child custody evaluators perform is the is the only way to accomplish this means and we ask that you reverse the decisions of the lower courts thank you thank you mr. Zimmerman mr. Howie we thank you for your arguments today case number 113 227 Deborah a Orlando Cooney at all appellants versus Lyle H Rossiter jr. happily is taken under advisement as agenda number 14 professor Borland we thank you and your students for attending today mr. Marshall will stand in recess now come back at approximately 11 or 1055